1 | ANDREWS KURTH LLP
  | Ralph W. Tarr, State Bar No. 072893
2 | *rtarr@andrewskurth.com*
  | 601 South Figueroa, Suite 3700
3 | Los Angeles, California 90017
  | Telephone: 213.896.3100
4 | Facsimile: 213.896.3137

(Space Below Reserved for Filing Stamp Only)

**FILED**

JUL 1 2 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

5

6 | Attorneys for Receiver
  | WILLIAM D. BROWN

7

8 | ## IN THE UNITED STATES DISTRICT COURT

9 | ## FOR THE NORTHERN DISTRICT OF CALIFORNIA

10 | ## OAKLAND DIVISION

11 | SECURITIES AND EXCHANGE
12 | COMMISSION,

Misc. Civ. Action No. _____

**CV 07 - 80175 -MISC.**

13 |          Plaintiff,

**NOTICE OF RECEIVERSHIP**

14 | v.

15 | AMERIFIRST FUNDING, INC. AKA
   | AMERI-FIRST FUNDING, INC. AKA
16 | AMERI FIRST FUNDING, INC.,
   | AMERIFIRST ACCEPTANCE CORP.,
17 | JEFFREY C. BRUTEYN, DENNIS W.
   | BOWDEN,

18

19 |          Defendants,

20 | and,

21 | AMERICAN EAGLE ACCEPTANCE
   | CORP., HESS FINANCIAL CORP.,

22 |          Relief Defendants.

23

24 | The United States District Court for the Northern District of Texas has

25 | appointed William D. Brown of Weaver and Tidwell, L.L.P. as the temporary

26 | receiver ("Receiver") for receivership assets in the case styled *Securities and*

27 | *Exchange Commission v. Amerifirst Funding, Inc. aka Ameri-First Funding, Inc.*

28 | *aka Ameri First Funding, Inc., Amerifirst Acceptance Corp., Jeffrey C. Bruteyn,*

ANDREWS KURTH LLP
601 SOUTH FIGUEROA STREET, SUITE 3700
LOS ANGELES, CALIFORNIA 90017-5742
(213) 896-3100

ORIGINAL

1   *Dennis Bowden, Defendants and American Eagle Acceptance Corp., and Hess*
2   *Financial Corp., Relief Defendants*, Civil Action No. 3-07CV1188-D (the "Texas
3   Action"). The Receiver, having posted bond with the United States District Court
4   for the Northern District of Texas, hereby gives notice of the Receivership
5   pursuant to 28 U.S.C. § 754 to this district, where Receivership Assets, as defined
6   in the Order Appointing Temporary Receiver, may be located. Attached are
7   certified copies of the following documents filed in the Texas Action:

8       A.      Complaint;

9       B.      Temporary Restraining Order, and Order Freezing Assets, Requiring
10  an Accounting, Requiring Preservation of Documents, Requiring Repatriation of
11  Assets, and Authorizing Expedited Discovery;

12      C.      Order Appointing Temporary Receiver; and

13      D.      Order Unsealing Orders.

14

15                                       Respectfully submitted,

16  DATED: July 11, 2007               ANDREWS KURTH LLP

17

18

19                                  By: _____
                                         Ralph W. Tarr
20                                       Attorneys for Receiver
                                         William D. Brown
21

22  Of Counsel:

23  Spencer C. Barasch
    State Bar No. 00789075
24  Suzanne B. Campbell
    State Bar No. 24027547
25  Matthew G. Nielsen
    State Bar No. 24032792
26  ANDREWS KURTH LLP
    1717 Main Street, Suite 3700
27  Dallas, Texas 75201
    (214) 659-4400 (Telephone)
28  (214) 659-4401 (Facsimile)

ANDREWS KURTH LLP
601 SOUTH FIGUEROA STREET, SUITE 3700
LOS ANGELES, CALIFORNIA 90017-5742
(213) 896-3100



# ORIGINAL

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

SECURITIES AND EXCHANGE COMMISSION,

        Plaintiff,

    vs.

AMERIFIRST FUNDING, INC. aka
AMERI-FIRST FUNDING, INC. aka
AMERI FIRST FUNDING, INC.,
AMERIFIRST ACCEPTANCE CORP.,
JEFFREY C. BRUTEYN,
DENNIS W. BOWDEN,

        Defendants,

and,

AMERICAN EAGLE ACCEPTANCE CORP.,
HESS FINANCIAL CORP.,

        Relief Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

**COMPLAINT**
Civil Action No.

# 3-07CV1188-D



Plaintiff Securities and Exchange Commission alleges the following:

## SUMMARY

1.    The Defendants in this case are operating an investment fraud through which they have raised at least $35 million. Attracting investors with false promises of safety, the Defendants have used much of their victims' money for their personal benefit, acquiring houses, commercial real estate, an airplane and automobiles, among other things.

2.    Selling securities that they call "Secured Debt Obligations" ("SDOs"), the Defendants lie to their mostly elderly victims, falsely telling them that their funds will be conservatively invested and the securities they are being sold are safe, insured by several layers of coverage and guaranteed by a commercial bank.

Exh. A
Pg 3

Certified a true copy of an instrument on file in my office on JUL - 9 2007
Clerk, U.S. District Court,
Northern District of Texas
By _____ Deputy



3.    Moreover, the Defendants hide from investors the fact that Bruteyn, AmeriFirst's Managing Director, has a long record of financial irresponsibility and securities-related violations, including bankruptcies and regulatory actions.

4.    Based on the use of investor funds, AmeriFirst, like Bruteyn's past business ventures, is likely headed toward a financial collapse.  In the absence of emergency relief by the United States District Court, investors, many elderly, will suffer significant losses.

5.    By engaging in the conduct detailed in this Complaint, Defendants, directly or indirectly, singly or in concert, have engaged in, and unless enjoined will continue to engage in transactions, acts, practices and courses of business that constitute violations of Sections 5(a), 5(c) and17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77e(a), 77e(c) and 77q(a)] and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and of Rule 10b-5 [17 C.F.R. § 240.10b-5], promulgated thereunder.

## JURISDICTION AND VENUE

6.    The investments offered and sold by the Defendants are "securities" under Section 2(1) of the Securities Act [15 U.S.C. § 77b] and Section 3(a)(10) of the Exchange Act [15 U.S.C. § 78c].

7.    The Commission brings this action pursuant to the authority conferred upon it by Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)], and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)], to preliminarily and permanently enjoin Defendants from future violations of the federal securities laws.

8.    This Court has jurisdiction over this action, and venue is proper, pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)], and Section 27 of the Exchange Act [15 U.S.C. § 78aa].

9.    Defendants, directly or indirectly, made use of the means or instruments of



transportation and communication, and the means or instrumentalities of interstate commerce, or of the mails, in connection with the transactions, acts, practices and courses of business alleged herein. Certain of the transactions, acts, practices and courses of business alleged herein took place in the Northern District of Texas.

## DEFENDANTS

10.    **Jeffrey C. Bruteyn** ("Bruteyn"), age 37, of Dallas, Texas, is Managing Director of Amerifirst Funding, Inc. and Amerifirst Acceptance Corporation and the Director and sole owner of Hess Financial Corporation. Bruteyn was an associated person of broker-dealers from approximately 1994 until January 2002, when the NASD suspended him from associating with any NASD member for 18 months and fined him $15,000 for executing unauthorized trades, failing to follow customer instructions and making misrepresentations. In March 2002, the NASD ordered him to pay an arbitration award of $287,000 to a former client for breaching his fiduciary duties, churning the customer's account, making misrepresentations and omitting information, negligence in handling the account and unauthorized trading. Further, in August 2003, the NASD permanently barred Bruteyn from associating with any NASD member, as punishment for his failure to respond to the NASD's requests for documents and information. Bruteyn was also the CEO of American Securities Corp., an NASD member broker-dealer whose registration was cancelled while under suspension for failing to respond to a request for financial information and failing to pay a fee. In addition, Bruteyn filed "no-asset" Chapter 7 personal bankruptcies in 1996 and 2003.

11.    **Dennis W. Bowden** ("Bowden"), age 55, of Dallas, Texas, is the president of Amerifirst Funding, Inc., a director and chief operating officer of Amerifirst Acceptance Corporation and president and COO of American Eagle Acceptance Corporation.



12.    **Amerifirst Funding, Inc.** ("AFI"), is a Texas corporation operated and controlled by Bruteyn and Bowden. It is in the business of offering "Secured Debt Obligations" and has issued these securities without a registration statement being filed with the Commission. AFI has never registered a securities offering under the Securities Act and has not registered any class of securities under the Exchange Act.

13.    **Amerifirst Acceptance Corporation** ("AAC"), is a Texas corporation incorporated in February 2006 and controlled by Bruteyn and Bowden. It is in the business of offering "Collateral Secured Notes" ("CSNs") and is an issuer of these securities. The CSNs are essentially identical to the SDOs, but are only marketed directly by AmeriFirst. Throughout this Complaint, both securities will be referred to as "SDOs." The CSNs have not been registered under the Securities Act or Exchange Act, nor are they registered with any state. AAC has never registered a securities offering under the Securities Act and has not registered any class of securities under the Exchange Act.

### RELIEF DEFENDANTS

14.    **American Eagle Acceptance Corporation** ("American Eagle"), is a Texas corporation controlled by Bowden and held out to be a subsidiary of AFI. American Eagle holds at least three Motor Dealer Finance Licenses issued by the State of Texas, and is the maker of notes for car loans funded by Amerifirst.

15.    **Hess Financial Corporation** ("Hess"), is a Texas corporation controlled by Bruteyn. Hess has received millions of dollars in "consulting fees" from AmeriFirst and other related entities. Bruteyn used some of these funds to pay "referral fees" to AmeriFirst sales agents. In addition, Hess has used millions of dollars of these investor funds to purchase real estate in the Dallas area and elsewhere.



## THE FRAUDULENT SCHEME

### The AmeriFirst SDO Offering in General

16.    Since at least January 2006, Bruteyn and Bowden, through AFI and AAC

(collectively "AmeriFirst"), have raised at least $35 million, and as much as $55 million, from the

sale of SDOs to hundreds of investors located primarily in Texas and Florida.  Many of these

investors are senior citizens.  Both Bruteyn and Bowden control all aspects of AmeriFirst's

operations, including disseminating offering documents to sales agents and investors,

communicating with sales agents and investors, authorizing banking transactions, maintaining

AFI and affiliated company's brokerage accounts, signing the SDO Notes and Servicing

Agreements, and obtaining and maintaining insurance.

17.    According to offering materials, AmeriFirst, through its American Eagle

subsidiary, specializes in purchasing, factoring and collecting "qualified secured automobile

receivables," which are acquired on the open market from "select" car dealerships or generated

through auto sales on American Eagle's handful of used car lots.  These receivables supposedly

secure the SDOs.

18.    AFI markets the SDOs as a higher-yielding, but equally safe, alternative to bank

CDs, offering rates from 7% to 8% APR on two and three year terms.  While AmeriFirst has an

in-house sales agent to process investor paperwork and respond to inquiries from potential

investors attracted by AmeriFirst's website, the issuer markets the SDOs in large part through a

network of sales agents in Texas and Florida.  The entities selected by AmeriFirst as sales

agents hold themselves out as firms specializing in providing low-risk investments to the elderly

and persons saving for retirement.

19.    The customers who purchase the AmeriFirst investments are often lured to the

offices of the sales agents by ads in local newspapers touting the availability of relatively high-



yielding FDIC-insured certificates of deposit.  When conservative prospective investors respond

to the advertisements, they instead are pitched SDOs as an attractive alternative, paying a

higher rate of interest and supposedly offering safety comparable to an FDIC-insured CD.

     20.    The investment contract between AmeriFirst and its clients consists primarily of

two documents: (1) a document entitled "Collateral Secured Debt Obligation;" and (2) a

"Servicing Agreement" (collectively referred to as the "Agreement")  Investors send their funds

directly to AmeriFirst.

     21.    AmeriFirst investors may elect to receive monthly interest payments or to

compound their earnings by rolling over interest payments into the SDO.  Most investors have

elected to compound their returns; this has permitted AmeriFirst to make its scheduled monthly

payments to the minority of its investors in spite of the misappropriation of investor principal

and the low returns obtained on funds actually invested.

     22.    AmeriFirst claims that it does not pay commissions or fees to its sales agents.

However, bank records indicate that AmeriFirst has transferred millions of dollars of investor

funds to Hess Financial as "consulting fees" and that Hess Financial has, in turn, paid large

amounts to sales agents as "referral fees."  These referral fees appear to equal 4% to 5% of

the invested funds.

     23.    AmeriFirst promises investors that they can expect a heightened duty of candor,

trust and honesty from the company and its representatives.  The Agreement represents that

"the relationship between [investor] and [AmeriFirst] will be a relationship of trust in which

[AmeriFirst] shall comply with all the obligations of a fiduciary."  As set forth below, Defendants

actions belie these high-minded and comforting platitudes.

*RE: SEC v. AmeriFirst Funding, Inc., et al.*
**COMPLAINT**
    6

Exh. A
Pg 8



## False and Misleading Statements and Omissions
### In the Offer and Sale of AmeriFirst SDOs

### Safety of the Investment

24.    AmeriFirst promotional materials and contracts emphasize repeatedly the complete safety of the SDOs. Offering materials state that the investments are "guaranteed" by a commercial bank. Elsewhere, the materials claim that AFI is a "bank holding company" whose affiliate American Eagle has a "banking license from the State of Texas."

25.    Amerifirst further represents that investors are insulated from risk by several layers of insurance coverage. The following statements from AmeriFirst sales literature, correspondence to investors and potential investors from Bruteyn and Bowden and the investment contracts themselves are illustrative of the Defendants' representations:

- "[i]n addition to AmeriFirst's guarantee of your investment, the Fireman's Fund Insurance Group reinsures all of our receivable accounts;"

- AmeriFirst carries "a FRAUD and DISHONESTY BOND with Western Surety Company;"

- AmeriFirst's obligation is "guaranteed by a Commericial Bank and reinsured by two outside AA rated insurance companies. The reinsurance companies are Allianz and Lloyd's of London;"

- "[f]or insured notes (AmeriFirst) agree to keep a fully covered single interest coverage policy on all uninsured receivables at all times by The American National Insurance Company;"

- AmeriFirst's insurance coverage is comparable to FDIC insurance.

26.    To accentuate the impact of these representations, AmeriFirst provides investors and potential investors with copies of certificates purporting to verify the coverage by Lloyds, Allianz, Collateral Protection, Fireman's Fund and Western Surety Company. In discussing the

*RE: SEC v. AmeriFirst Funding, Inc., et al.*
**COMPLAINT**

7



purported insurance coverage, AmeriFirst investor materials boast that "[d]ue to the security of our Secured Debt Obligation Account, we feel that it is a perfect investment vehicle for someone in a conservative financial position."

27.     As the name of the security implies, AmeriFirst also represents that investor accounts will be protected by collateral. The Agreement states that AmeriFirst will "provide mutually agreeable collateral to secure this note within one month of the date of execution of this Note."

28.     Finally, AmeriFirst purports to assure the safety of investor funds through its conservative investment policy. AmeriFirst promises that the "funds advanced by investors shall be held either in cash in the investor's separate account, government or corporate AAA bonds, qualified receivables or publicly traded stock, namely IFHC."

29.     In fact, AmeriFirst's contention that investor accounts are virtually risk-free is built on a foundation of lies. Contrary to AmeriFirst's claim, there is no evidence that the AmeriFirst SDOs are guaranteed by a commercial bank. American Eagle is not, as represented by AmeriFirst, licensed as a commercial bank. Moreover, no other commercial bank guarantees AmeriFirst's obligations to its investors.

30.     AmeriFirst's description of the insurance protecting investors is also false and misleading. AmeriFirst does not carry insurance that guarantees its "receivables or investor accounts". During the relevant period, AmeriFirst has had in effect no insurance coverage from Fireman's Fund or Allianz. AmeriFirst's policy with Lloyds covers only losses relating to the automobiles that collateralize notes written or purchased by American Eagle. The Lloyd's coverage, moreover, is limited to an annual aggregate maximum of $200,000, a fraction of AmeriFirst's obligations to its investors.



31.    The "fraud and dishonesty bond" issued by Western Surety covers only fraudulent and dishonest acts committed by an employee against the *company*, such as embezzlement or theft of property. It does not protect investors or their accounts. Moreover, it is limited to $100,000 per employee, with an aggregate maximum coverage limit of $600,000.

32.    In addition, AmeriFirst has not collateralized most of its debt to investors. Only a small portion of investor funds has been placed in instruments secured by collateral, specifically automobile loan receivables.

33.    Finally, AmeriFirst consistently deviates from its promise to place funds in specified low-risk investments. As set forth more fully below, AmeriFirst has used millions of dollars collected from clients to purchase low-grade and speculative investments.

### Misuse and Misappropriation of Investor Funds

34.    AmeriFirst has not used investor funds for the purposes represented to investors. The Defendants have stolen millions of dollars and risked millions more in unauthorized investment vehicles.

35.    Contrary to their representations to investors, Defendants have not maintained separate accounts on behalf of each of AmeriFirst's investors. AmeriFirst has commingled investor funds in accounts controlled by Bruteyn and Bowden.

36.    At least $4.7 million of investor funds have been transferred from AmeriFirst to Hess Financial's accounts and another $2.49 million of investor funds have been directly deposited in the Hess account; Bruteyn effectively treats Hess accounts as his personal checking account. Among the personal payments Bruteyn has made through this account are: $1.98 million to purchase real estate through a Florida broker; $200,000 to invest in other real property; $160,000 in credit card payments; $109,000 for a divorce settlement and child support; $100,000 as a partial payment on an Aston Martin automobile; $35,000 for flooring at

*RE:  SEC v. AmeriFirst Funding, Inc., et al.*                                9
**COMPLAINT**

 

"Tile Land," a $30,000 payment for an airplane (Bowden is a pilot); and various amounts totaling more than $750,000 for other personal expenses such as country club dues, interior decorating services (provided by Bowden's wife), landscaping services, utilities, travel and cash withdrawals. Bowden also received over $850,000 from Hess to purchase and remodel a Dallas home.

 37. Defendants have spent $1.4 million on commercial real estate to expand their chain of used car dealerships. They have spent approximately $2.3 million to fund business operations, including expenditures to purchase the inventory of automobiles for the used car lots.

 38. AmeriFirst has placed only a fraction of funds collected from investors in secure, collateralized investments. Instead, Defendants have placed millions of dollars in such risky investments as junk-rated corporate bonds, put and call options, common stocks in volatile industries, such as the technology sector, and floating rate funds.

### Misrepesentations and Omissions Concerning the Background Of AmeriFirst and Its Principals

 39. AmeriFirst sales literature and correspondence describes the background of the company and its principals in solely positive, if not laudatory, terms. Defendants represent that AmeriFirst and its present management have been "in business for 15 years without one complaint or late payment."

 40. AmeriFirst boasts that Bruteyn, its managing director, is a "CRCP (Certified Regulatory and Compliance Professional) from the Wharton School of Business." AmeriFirst describes Bruteyn as holding "Series 7, 24 and 63 securities licenses" from the NASD and further touts his experience as director of an investment banking department, where "[i]n addition to market making and brokerage activities, Mr. Bruteyn specialized in compliance issues pertaining to these activities."

*RE: SEC v. AmeriFirst Funding, Inc., et al.*
**COMPLAINT**

10



41.     Defendants fail to disclose to investors Bruteyn's history of financial irresponsibility and his record of securities-related sanctions. Within the past decade, once in 1998 and again in 2005, Bruteyn discharged his personal debts through a Chapter 7 Bankruptcy. Bruteyn has been sanctioned by the NASD for numerous improprieties and, in August 2003, was finally barred from association with any NASD member. As a consequence, contrary to AmeriFirst's claim, Bruteyn no longer holds any NASD securities licenses. Bruteyn was also CEO of AmeriFirst Securities Corp., a broker-dealer which withdrew its registrations with the SEC and NASD in 2001 while it was under NASD suspension for failing to respond to a request for financial information by the NASD and for failing to pay a fee.

### ONGOING ACTIVITIES AND FUTURE PROSPECTS

42.     Defendants' offer and sale of the AmeriFirst SDOs is ongoing. AmeriFirst continues to promote the program, collect investor funds and pay commissions to its sales agents.

43.     As a consequence of Defendants' pattern of misappropriating principal and placing client funds in investments that provide insubstantial returns, AmeriFirst investors are likely to suffer significant losses. A large proportion of AmeriFirst clients have elected to let their returns compound, rather than receiving interest payments on a monthly basis. AmeriFirst has managed to make interest payments to the other investors; it is not, however, preserving sufficient principal and earning sufficient income to meet its obligations to compounding investors when their AmeriFirst SDOs mature.

44.     Twice in the past decade, Bruteyn has had to resort to the bankruptcy court as a consequence of his propensity to incur financial obligations that he is not prepared to fulfill. In the absence of emergency relief, these Defendants will likely, in the near future, repeat this pattern of irresponsibility and AmeriFirst investors will suffer great financial distress and

*RE: SEC v. AmeriFirst Funding, Inc., et al.*
**COMPLAINT**

11

Exh. A
Pg 13



hardship. The relief requested by the Commission will circumscribe the damage to present investors, prevent others from falling prey to AmeriFirst's false and misleading claims, and enhance the ability of the Commission to provide victims with monetary relief.

### FIRST CLAIM
### Violations of Section 17(a) of the Securities Act

[As to All Defendants]

45.    Plaintiff Commission repeats and incorporates paragraphs 1 through 44 of this Complaint by reference as if set forth *verbatim*.

46.    The Defendants, directly or indirectly, singly or in concert with others, in connection with the offer or sale of securities, by use of the means and instrumentalities of interstate commerce and by use of the mails have:  (a) employed devices, schemes and artifices to defraud;  (b) made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and  (c)  engaged in acts, practices and courses of business which operate as a fraud and deceit upon purchasers, prospective purchasers and other persons.

47.    As a part of and in furtherance of their scheme, the Defendants, directly and indirectly, prepared, disseminated or used contracts, written offering documents, promotional materials, investor and other correspondence, and oral presentations, which contained untrue statements of material facts and misrepresentations of material facts, and which omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, including, but not limited to, those set forth in Paragraphs 1 through 44 above.

48.    With respect to violations of Sections 17(a)(2) and (3) of the Securities Act, the Defendants were negligent in their actions regarding the representations and omissions alleged

*RE:  SEC v. AmeriFirst Funding, Inc., et al.*                                            12
**COMPLAINT**



herein. With respect to violations of Section 17(a)(1) of the Securities Act, the Defendants made the above-referenced misrepresentations and omissions knowingly or with severe recklessness regarding the truth.

49.     By reason of the foregoing, the Defendants have violated and, unless enjoined, will continue to violate Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

**SECOND CLAIM**
**Violations of Section 10(b) of the Exchange Act and Rule 10b-5**

[As to All Defendants]

50.     Plaintiff Commission repeats and incorporates paragraphs 1 through 44 of this Complaint by reference as if set forth *verbatim.*

51.     The Defendants, directly or indirectly, singly or in concert with others, in connection with the purchase or sale of securities, by use of the means and instrumentalities of interstate commerce and by use of the mails have:  (a) employed devices, schemes and artifices to defraud;  (b) made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and  (c)  engaged in acts, practices and courses of business which operate as a fraud and deceit upon purchasers, prospective purchasers and other persons.

52.     As a part of and in furtherance of their scheme, the Defendants, directly and indirectly, prepared, disseminated or used contracts, written offering documents, promotional materials, investor and other correspondence, and oral presentations, which contained untrue statements of material facts and misrepresentations of material facts, and which omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, including, but not limited to, those set forth in Paragraphs 1 through 44 above.

*RE:  SEC v. AmeriFirst Funding, Inc., et al.*                                    13
**COMPLAINT**



53.     The Defendants made the above-referenced misrepresentations and omissions knowingly or with severe recklessness regarding the truth.

54.     By reason of the foregoing, the Defendants violated and, unless enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

### THIRD CLAIM
### <u>Violations of Section 5(a) and 5(c) of the Securities Act</u>

[As to All Defendants]

55.     Plaintiff Commission repeats and incorporates paragraphs 1 through 44 of this Complaint by reference as if set forth *verbatim*.

56.     Defendants, directly or indirectly, singly and in concert with others, have been offering to sell, selling and delivering after sale, certain securities, and have been, directly and indirectly: (a) making use of the means and instruments of transportation and communication in interstate commerce and of the mails to sell securities, through the use of written contracts, offering documents and otherwise; (b) carrying and causing to be carried through the mails and in interstate commerce by the means and instruments of transportation, such securities for the purpose of sale and for delivery after sale; and (c) making use of the means or instruments of transportation and communication in interstate commerce and of the mails to offer to sell such securities.

57.     As described in paragraphs 1 through 44, the AmeriFirst investments described in detail herein, have been offered and sold to the public through a general solicitation of investors.   No registration statements were ever filed with the Commission or otherwise in effect with respect to these securities.




58.    By reason of the foregoing, the Defendants have violated and, unless enjoined, will continue to violate Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

## FOURTH CLAIM
### Claim Against the Relief Defendants
### As Custodians of Investor Funds

59.    Plaintiff Commission repeats and realleges paragraphs 1 through 44 of this Complaint and incorporated herein by reference as if set forth *verbatim*.

60.    As set forth in this Complaint, Relief Defendants have received funds and property from one or more of the Defendants, which are the proceeds, or are traceable to the proceeds, of the unlawful activities of Defendants, as alleged in paragraphs 1 through 44, above.

61.    Relief Defendants have obtained the funds and property alleged above as part of and in furtherance of the securities violations alleged in paragraphs 1 through 44 and under the circumstances in which it is not just, equitable or conscionable for them to retain the funds and property.  As a consequence, Relief Defendants Hess and American Eagle have been unjustly enriched.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff respectfully requests that this Court:

### I.

Temporarily, preliminarily and permanently Defendants from violating Sections 5(a), 5(c), and 17(a) of the Securities Act and Section 10(b) of the Exchange Act, and Rule 10b-5 thereunder.



## II.

Enter an Order *instanter* freezing the assets of Defendants and Relief Defendants and directing that all financial or depository institutions comply with the Court's Order. Furthermore, order *instanter* that Defendants and Relief Defendants repatriate any funds held at any bank or other financial institution not subject to the jurisdiction of the Court, and that they direct the deposit of such funds in identified accounts in the United States, pending conclusion of this matter.

## III.

Order *instanter* that Defendants and Relief Defendants shall file with the Court and serve upon Plaintiff Commission, no later than 72 hours after notice of this Order, an accounting, under oath, detailing all of their assets and all funds or other assets received from investors and from one another.

## IV.

Order *instanter* that Defendants and Relief Defendants be restrained and enjoined from destroying, removing, mutilating, altering, concealing or disposing of, in any manner, any of their books and records or documents relating to the matters set forth in the Complaint, or the books and records and such documents of any entities under their control, until further order of the Court.

## V.

Order *instanter* the appointment of a receiver *pendente lite* for Defendants and Relief Defendants, for the benefit of AmeriFirst investors, to marshal, conserve, protect and hold funds and assets obtained by the Defendants and Relief Defendants and their agents, co-conspirators and others involved in this scheme, wherever such assets may be found, or, with the approval of the Court, dispose of any wasting asset in accordance with the application and proposed order provided herewith.

*RE: SEC v. AmeriFirst Funding, Inc., et al.*
**COMPLAINT**

16

## VI.

Order that the parties may commence discovery immediately, and that notice periods be shortened to permit the parties to require production of documents, or the deposition of any party or party-representative, on 72 hours notice.

## VII.

Order the Defendants to disgorge an amount equal to the funds and benefits they obtained illegally as a result of the violations alleged herein, plus prejudgment interest on that amount, and order the Relief Defendants to disgorge an amount equal to the illegally obtained investors funds they received from the Defendants, plus prejudgment interest on that amount.

## VIII.

Order civil penalties against the Defendants pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)], for the violations alleged herein.

## IX.

Order such further relief as this Court may deem just and proper.

For the Commission, by its attorneys:

Dated and signed on the 2nd day of July 2007

JEFFREY B. NORRIS
Washington, D.C. Bar No. 424258
U.S. SECURITIES & EXCHANGE
COMMISSION
801 Cherry St., 19th Floor
Fort Worth, Texas 76102
Office:  (817) 978-6452
Fax:   (817) 978-4927

*RE:  SEC v. AmeriFirst Funding, Inc., et al.*
**COMPLAINT**

17

JS 44 (Rev. 11/04)

**ORIGINAL**

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I.(a) PLAINTIFFS**

UNITED STATES SECURITIES AND EXCHANGE COMMISSION

**DEFENDANTS**

Amerifirst Funding, Inc. aka Ameri-First Funding, Inc. aka Ameri First Funding, Inc.; AmeriFirst Acceptance Corp.; Jeffrey C. Bruteyn, Dennis C. Bowden; Defendants, and American Eagle Acceptance Corp., and Hess Financial Corp., Relief Defendants.

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant:   **Dallas**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEY (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Jeffrey B. Norris
U.S. Securities and Exchange Commission
801 Cherry Street, Suite 1900
Fort Worth, TX 76102
(817) 978-6452

RECEIVED
JUL - 2 2007
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT

ATTORNEYS (IF KNOWN)

**3-07CV1188-D**

**II. BASIS OF JURISDICTION** (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☐ 3 Federal Question (U.S. Government Not a Party)

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | PTF | | PTF | PTF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury - Med Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt. Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS - Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☒ 810 Selective Service
- ☒ 850 Securities/Commodities/Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/Accommodations
- ☐ 444 Welfare
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence
- Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights

**V. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (Specify)

☐ 6 Multidistrict Litigation

☐ 7 Appeal to District Judge from Magistrate Judge

**VI. CAUSE OF ACTION** CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING (DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

Brief Description of cause: Sections 17(a), 5(a), 5(c) of the Securities Act of 1933 [15 U.S.C. § 77q(a), 77e(a), 77e(c)] and Section 10(b) Securities Exchange Act of 1934 [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

**VII. REQUESTED IN COMPLAINT:**  CHECK IF THIS IS A CLASS ACTION  ☐ UNDER F.R.C.P. 23   DEMAND $ _____   CHECK YES only if demanded in complaint:   JURY DEMAND ☐ YES   ☐ NO

**VIII. RELATED CASE(S) IF ANY** (See Instructions):   JUDGE _____   DOCKET NUMBER _____

DATE _____   SIGNATURE OF ATTORNEY OF RECORD _____

FOR OFFICE USE ONLY
Receipt # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

**Exh. A**
**Pg 20**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § § | |
| Plaintiff, | § | |
| VS. | § § § | Civil Action No. 3:07-CV-1188-D **SEALED ORDER** |
| AMERIFIRST FUNDING, INC., et al., | § § § | |
| Defendants. | § | |

TEMPORARY RESTRAINING ORDER, AND ORDER FREEZING
ASSETS, REQUIRING AN ACCOUNTING, REQUIRING PRESERVATION OF
DOCUMENTS, REQUIRING REPATRIATION OF ASSETS,
AND AUTHORIZING EXPEDITED DISCOVERY

Plaintiff Securities and Exchange Commission ("Commission") has applied *ex parte* for a

temporary restraining order, an asset freeze, and other substantive and procedural orders against

AmeriFirst Funding, Inc., a/k/a Ameri-First Funding, Inc., a/k/a Ameri First Funding, Inc. ("AmeriFirst

Funding"), AmeriFirst Acceptance Corp. ("AmeriFirst Acceptance"), Jeffrey C. Bruteyn ("Bruteyn"),

Dennis W. Bowden ("Bowden") (collectively "Defendants"), and American Eagle Acceptance

Corporation ("American Eagle") and Hess Financial Corporation ("Hess"), who are defendants solely

for purposes of equitable relief (collectively "Relief Defendants").  Having considered the

Commission's complaint, supporting memorandum, declarations, and exhibits thereto, the court finds

as follows:

1.    The court has jurisdiction over the subject matter of this action and over all parties, and

the Commission is a proper party to bring this action seeking the relief sought in its complaint.

2.    There is good cause to believe that defendants have engaged, are engaged, and will

continue to engage, in acts and practices that constitute and will constitute violations of Sections 5(a),

5(c) and 17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77e(a), 77e(c), and

Certified **a true copy of an instrument**
on file in my office on ___JUL - 9 2007
Clerk, U.S. District Court,
Northern District of Texas
By *Q. Manard*_____ Deputy

Exh. B
Pg 21

77q(a)]; and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 US.C. §
78j(B) and Rule 10b-5, 17 C.F.R. § 240.10b-5, thereunder.

3.      There is good cause to believe that investor funds and assets obtained by defendants
and Relief Defendants from the unlawful activities described in the Commission's complaint have been
and will be misappropriated, wasted, or otherwise used to the detriment of investors.  Furthermore,
there is good cause to believe that defendants and Relief Defendants do not have sufficient funds or
assets to satisfy the relief that might be ordered in this action.

4.      There is good cause to believe that investor funds and assets obtained by defendants
and Relief Defendants from the unlawful activities described in the Commission's complaint may be
outside the jurisdiction of this court, and that defendants and Relief Defendants may have assets
outside the jurisdiction of this court.

5.      There is good cause to believe that defendants used improper means to obtain investor
funds and assets.  There is good cause to believe that the Relief Defendants received investor funds
and assets as a result of defendants' improper conduct.

6.      There is good cause to believe that defendants will continue to engage in the acts and
practices constituting the violations set forth above unless restrained and enjoined by order of this
court.

7.      There is good cause to believe that giving notice to defendants or Relief Defendants
of the Commission's motion for this order would result in immediate and irreparable injury, loss, or
damage to investors.

8.      There is good cause to believe that an accounting is appropriate to determine the
disposition of investor funds and to ascertain the total assets that should continue to be frozen.

9.      There is good cause to believe that it is necessary to preserve and maintain the business records of defendants and Relief Defendants from destruction.

10.     There is good cause to believe that it is necessary to order the repatriation of assets to assure the ability of the court to order the payment of disgorgement and civil money penalties as authorized.

11.     This proceeding is one in which the Commission seeks a preliminary injunction.

12.     The timing restrictions of Fed. R. Civ. P. 26(d) and (f), 30(a)(2)(C) and 34 do not apply to this proceeding in light of the Commission's requested relief and its demonstration of good cause.

13.     Expedited discovery is appropriate to permit a prompt and fair hearing on the Commission's motion for preliminary injunction.

Pending further order of this court, it is therefore ordered as follows.

I

Defendants, their agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise, are restrained and enjoined from making use of any means or instrumentalities of interstate commerce, or of the mails or of any facility of a national security exchange, directly or indirectly, in connection with the purchase or sale of any security:

(a)     to employ any device, scheme or artifice to defraud;

(b)     to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

- 3 -

**Exh. B**
**Pg 23**

(c)     to engage in any act, practice, or course of business that operates or would operate as

a fraud or deceit upon any person; or

(d)     to use or employ any manipulative or deceptive device or contrivance in contravention

of a rule or regulation prescribed by the Securities and Exchange Commission.

[Exchange Act § 10(b) and Rule 10b-5 thereunder (15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5)].

II

Defendants, their agents, servants, employees, attorneys, and all persons in active concert or

participation with them who receive actual notice of this order by personal service or otherwise, are

restrained and enjoined in the offer or sale of any securities by use of any means or instruments of

transportation or communication in interstate commerce, or of the mails, from, directly or indirectly:

(a)     employing any device, scheme, or artifice to defraud;

(b)     obtaining money or property by means of any untrue statement of a material fact or any

omission to state a material fact necessary in order to make the statements made, in light of the

circumstances under which they were made, not misleading; or

(c)     engaging in any transactions, practices, or courses of business that operate or would

operate as a fraud or deceit upon any purchaser or prospective purchaser.

[Securities Act § 17(a) (15 U.S.C. § 77q(a))].

III

Defendants, their agents, servants, employees, and all persons in active concert or participation

with them who receive actual notice of this order by personal service or otherwise, are restrained and

enjoined from, directly or indirectly:

(a)     making use of the means or instruments of transportation or communication in interstate commerce or of the mails to sell any securities through the use or medium of any offering document or otherwise, unless and until a registration statement is in effect with the Commission as to such securities;

(b)     carrying any securities or causing them to be carried through the mails or in interstate commerce, by any means or instruments of transportation, for the purpose of sale or delivery after sale, unless and until a registration statement is in effect with the Commission as to such securities; or

(c)     making use of any means or instruments of transportation or communication in interstate commerce, or of the mails, to offer to sell, or to offer to buy, through the use or medium of any offering documents or otherwise, any securities, unless a registration statement has been filed with the Commission as to such securities, or while a registration statement filed with the Commission as to such securities is the subject of a refusal order or stop order or (prior to the effective date of the registration statement) any public proceeding of examination under Section 8 of the Securities Act, 15 U.S.C. § 77h,; provided, however, that nothing in this part III of this order shall apply to any security or transaction that is exempt from the provisions of § 5 of the Securities Act, 15 U.S.C. § 77e.

[Securities Act §§ 5(a) and 5(c) (15 U.S.C. §§ 77e(a) and 77e(c))].

IV

Defendant and Relief Defendants, their officers, agents, employees, servants, attorneys and all persons in active concert or participation with them, who receive actual notice of this order by personal service or otherwise, are restrained and enjoined from, directly or indirectly, making any payment or

- 5 -

**Exh. B**
**Pg 25**

expenditure of funds (including charges on any credit card or draws on any other credit arrangement), and from assigning, conveying, transferring, encumbering, disbursing, dissipating, selling, hypothecating, or concealing any assets, monies, or other property owned by or in the actual or constructive possession of defendants or Relief Defendants, pending a showing to this court that they have sufficient funds or assets to satisfy all claims arising from the violations alleged in the complaint, pending the posting of a bond or surety sufficient to assure payment of any such claim, or until further order of this court.

Further, any bank, savings and loan associations, savings banks, commodities, dealers, investment company, trust company, broker-dealer, or other financial or depository institution and investment companies holding one or more accounts for or on behalf of defendants or Relief Defendants are hereby restrained and enjoined from engaging in any transaction in securities and shall make no transactions (excepting liquidating transactions necessary as to wasting assets) and no disbursements of funds or securities (including extensions of credit, or advances on existing lines of credit), including the honor of any negotiable instrument (including specifically, any check, draft, or cashier's check) purchased by or for defendants or Relief Defendants, pending further order of this court. This provision shall continue in full force and effect until further order by this court and shall not expire.

V

All other individuals, corporations, partnerships, limited liability companies, and other artificial entities are hereby restrained and enjoined from disbursing any funds, securities, or other property obtained from defendants or Relief Defendants without adequate consideration.

VI

To effectuate the provisions of parts IV and V above, the Commission may cause a copy of this order to be served on any bank, savings and loan, broker-dealer, or other financial or depository institution, either by United States mail or by facsimile, as if such service were personal service, to restrain and enjoin any such institution from disbursing funds, directly or indirectly, to or on behalf of defendants or Relief Defendants, or any companies or persons or entities under their control, including, but not limited to the following accounts:

| Financial Institution | Account Name | Signatories | Account # |
|---|---|---|---|
| Washington Mutual | Amerifirst Acceptance Corporation | Dennis Bowden | 4266894885 |
| Washington Mutual | Amerifirst Acceptance Corporation | Dennis Bowden | 4266674104 |
| Washington Mutual | Amerifirst Acceptance Corporation | Dennis Bowden | 3131405909 |
| Washington Mutual | Amerifirst Funding Inc. | Dennis Bowden | 9311447282 |
| Washington Mutual | Amerifirst Funding Inc. Escrow Account | Dennis Bowden | 4880881557 |
| Washington Mutual | Amerifirst Funding Inc. | Dennis Bowden | 4266674097 |
| Washington Mutual | Amerifirst Funding Inc. | Dennis Bowden | 3131405587 |
| Washington Mutual | Amerifirst Funding Inc. | Dennis Bowden | 0932817250 |
| Washington Mutual | Amerifirst Funding Inc. Tax Escrow | Dennis Bowden | 3114205053 |
| Washington Mutual | Amerifirst Funding Inc. | Dennis Bowden | 3092278239 |
| Washington Mutual | Amerifirst Funding Inc. Drivers Protection Group | Dennis Bowden | 1800551665 |
| Washington Mutual | Amerifirst Funding Inc. Drivers Protection Group | Dennis Bowden | 0932816327 |
| Washington Mutual | Amerifirst Funding Inc. Drivers Protection Group | Dennis Bowden | 0932816319 |
| Washington Mutual | Amerifirst Funding Inc. | Dennis Bowden | 09219295532 |
| Washington Mutual | Amerifirst Funding Inc. | Dennis Bowden | 09219295524 |
| Washington Mutual | Amerifirst Funding Inc. | Dennis Bowden | 09219295516 |
| Washington Mutual | Amerifirst Funding Inc. | Dennis Bowden | 09219295508 |
| Washington Mutual | Amerifirst Funding Inc. | Dennis Bowden | 09219295392 |
| Washington Mutual | Amerifirst Funding Inc. | Dennis Bowden | 09219295384 |
| Washington Mutual | Amerifirst Funding Inc. | Dennis Bowden | 09219295376 |
| Washington Mutual | Amerifirst Funding Inc. | Dennis Bowden | 09219295368 |

**Exh. B**
**Pg 27**

| Financial Institution | Account Name | Signatories | Account # |
|---|---|---|---|
| Washington Mutual | Amerifirst Funding Inc. | Dennis Bowden | 09219295350 |
| Washington Mutual | Amerifirst Funding Inc. | Dennis Bowden | 09219295293 |
| Washington Mutual | Amerifirst Funding Inc. | Dennis Bowden | 09219295277 |
| Washington Mutual | Amerifirst Funding Inc. | Dennis Bowden | 09219295269 |
| Washington Mutual | Amerifirst Funding Inc. | Dennis Bowden | 09219295251 |
| Washington Mutual | Amerifirst Funding Inc. | Dennis Bowden | 09219295243 |
| Washington Mutual | Amerifirst Funding Inc. | Dennis Bowden | 09219295235 |
| Washington Mutual | Amerifirst Funding Inc. | Dennis Bowden | 09219295227 |
| Washington Mutual | Amerifirst Funding Inc. | Unknown | 4266674089 |
| Sterling Bank | Hess Financial Corporation | Jeffrey Bruteyn | 2022013621 |
| Compass Bank | American Eagle Acceptance Corporation | Unknown | 70362848 |
| Bank United | Ameri-First Funding, Inc. | Louis Dunklin | 8003677245 |
| Wells Fargo Bank | Dennis Bowden | Dennis Bowden | 6500259143 |
| Galleria Credit Union | Jeffrey Bruteyn | Jeffrey Bruteyn | 75981 |
| First Caribbean National Bank | Hess Financial Corporation through Meridian Trust Limited | Unknown | A/026005092? G/088001117? |
| Merrill Lynch | Amerifirst Funding, Inc. | Dennis Bowden | 540-02201 |
| Fidelity Investments | Hess Financial | Jeffrey Bruteyn | LS9-950408 |
| Fidelity Investments | Amerifirst Funding | Dennis Bowden | LS9-950424 |
| Fidelity Investments | Hess Financial | | LS9-880442 |
| E*Trade | Ameri-First Funding, inc. | Dennis Bowden | 6132-6085 |
| Merrill Lynch | | Dennis Bowden | 1011730 |
| E*Trade Bank | AmeriFirst Funding, Inc. | Dennis Bowden | 2013136277 |
| Legent Clearing | | | 33524491 |
| Penson Financial Services | | | 64303944 |

VII

Defendants and Relief Defendants shall immediately repatriate all funds and assets obtained, directly or indirectly, from the activities described in the Commission's complaint that are now located outside the jurisdiction of this court. Such funds shall be immediately transferred or paid to the court-appointed receiver ("Receiver"). Furthermore, with respect to any other asset owned by defendants or Relief Defendants that is now located outside the jurisdiction of this court, including, specifically, any monies, securities, real property, or other assets, defendants and Relief Defendants shall—within two business days of receipt of the Receiver's written request—identify

to the Receiver the location of such asset, the price paid or consideration given, and the date upon which it was purchased and/or received. Securities, or other personalty that can be readily moved or transferred, and title or other documents reflecting ownership as to real property, shall—within two business days of receipt of the Receiver's written request—be delivered to the Receiver .

VIII

Defendants and Relief Defendants shall make an interim accounting, under oath, within 14 days of the signing of this order, detailing by amount, date, method, and location of transfer, payee and payor, purpose of payment or transfer of: (1) all monies and other benefits that each received, directly or indirectly, as a result of the activities alleged in the complaint (including the date on which the monies or other benefit was received and the name, address, and telephone number of the person paying the money or providing the benefit), (2) all current assets wherever they may be located and by whomever they are being held (including the name and address of the holder and the amount or value of the holdings), and (3) all accounts with any financial or brokerage institution maintained in the name of, on behalf of, or for the benefit of defendants or Relief Defendants (including the name and address of the account holder and the account number) and the amount held in each account at every monthly interval during the period from January 1, 2005, through the date of the accounting. The accounting shall be sufficient to permit a full understanding of the flow of investor funds from the investor to its present location to the extent known by defendants and Relief Defendants or within their power to learn. The accounting and all documents reviewed in the course of the preparation thereof or otherwise pertaining thereto shall be delivered by facsimile or overnight courier to Jeffrey B. Norris, United States Securities and Exchange Commission, Fort Worth

Regional Office, 801 Cherry Street, 19th Floor, Unit 18, Fort Worth, Texas 76102 by the deadline set forth above.

IX

Defendants and Relief Defendants, their officers, directors, agents, servants, employees, attorneys, and all persons in active concert or participation with them, including any bank, securities broker-dealer, or financial or depository institution, who receive actual notice of this order by personal service or otherwise, are restrained and enjoined from destroying, removing, mutilating, altering, concealing or disposing of, in any manner, any of their books and records or any documents relating in any manner to the matters set forth in the Commission's complaint, or the books and records and documents of any entities under their control, until further order of this Court.

X

A.      All parties may take depositions upon oral examination, and demand production of documents or other things, of parties and persons who are not parties, prior to the expiration of 30 days after service of the Commission's complaint on defendants and Relief Defendants.

B.      All parties shall comply with the provisions of Fed. R. Civ. P. 45 regarding issuance and service of subpoenas, unless the provision of testimony or production of documents is agreed to by the person(s) subpoenaed.

C.      Pursuant to Rule 30(a), all parties may take depositions upon oral examination, subject to 72 hours' notice.

D.      Pursuant to Rule 34(b), the parties shall produce all documents requested within 72 hours of service of such request.

- 10 -

E.     All written responses to any party's requests for discovery under the Federal Rules of Civil Procedure shall be delivered by facsimile or overnight courier to Jeffrey B. Norris, United States Securities and Exchange Commission, Fort Worth Regional Office, 801 Cherry Street, 19th Floor, Fort Worth, Texas, 76102, or such other place as counsel may direct.

XI

The United States Marshal in any district in which any defendant or Relief Defendant resides, transacts business, or may be found is authorized to make service of process at the request of the Commission.

XII

The Commission is authorized to serve process on, and give notice of these proceedings and the relief granted herein to, defendants and Relief Defendants by U.S. Mail or by any other means authorized by the Federal Rules of Civil Procedure.

XIII

Calculated under Rules 6(a) and 65(b), this Temporary Restraining Order expire at 5:00 p.m. on July 17, 2007, unless extended by the court for good cause or by agreement of the parties.

**SO ORDERED**.

July 2, 2007 at 2:20 p.m.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

- 11 -

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SECURITIES AND EXCHANGE       §
COMMISSION,                   §
                              §
              Plaintiff,      §
                              §  Civil Action No. 3:07-CV-1188-D
VS.                           §     **SEALED ORDER**
                              §
AMERIFIRST FUNDING, INC., et al., §
                              §
              Defendants.     §

<u>ORDER APPOINTING TEMPORARY RECEIVER</u>

Plaintiff Securities and Exchange Commission ("Commission") has applied *ex parte* for

appointment of a temporary receiver for defendants AmeriFirst Funding, Inc. ("AmeriFirst

Funding"), AmeriFirst Acceptance Corp. ("AmeriFirst Acceptance"), Jeffrey C. Bruteyn

("Bruteyn"), and Dennis W. Bowden ("Bowden"), and Relief Defendants American Eagle

Acceptance Corp. ("American Eagle") and Hess Financial Corp. ("Hess"). It appears that this *ex*

*parte* order appointing temporary receiver is necessary and appropriate to prevent waste and

dissipation of the assets of defendants and Relief Defendants, to the detriment of investors.

I

It is therefore ordered as follows:

1.     The court hereby takes exclusive jurisdiction and possession of the assets, monies, securities,

claims in action, and properties, real and personal, tangible and intangible, of whatever kind and

description, wherever situated, of defendants AmeriFirst Funding, AmeriFirst Acceptance, Bruteyn,

and Bowden, and Relief Defendants American Eagle and Hess or any entities controlled by

defendants or Relief Defendants ("Receivership Assets"), and the books and records of defendants

and Relief Defendants ("Receivership Records").

Exh. C
Pg 32

Certified a true copy of an instrument
on file in my office on ___JUL - 9 2007___
Clerk, U.S. District Court,
Northern District of Texas
By _Q.McKennol_____ Deputy

2.      William D. Brown, C.P.A., J.D., Weaver and Tidwell, L.L.P., 12221 Merit Drive, Suite 1400, Dallas, Texas 75251-2280, telephone number  (972) 448-6966, facsimile number (972) 702-8321, is appointed temporary receiver ("Receiver") for the Receivership Assets.  The Receiver must file with the clerk of court a bond in the sum of $10,000, without need for sureties approved by the court, to assure his conscientious performance of the duties and responsibilities imposed by this order.  The Receiver is hereby authorized to take and have possession of the Receivership Assets and Receivership Records.  Until further court order, the Receiver shall have complete and exclusive control, possession, and custody of all Receivership Assets and Receivership Records.

3.      All persons, including defendants and Relief Defendants, and their officers, agents, servants, employees, brokers, facilitators, attorneys, and all persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise, and specifically including any bank or other financial or depository institution holding accounts for or on behalf of defendants and Relief Defendants, or on which defendants or Relief Defendants are signatories, shall promptly deliver to the Receiver all Receivership Assets in the possession or under the control of any one or more of them and shall promptly surrender all Receivership Records.  No separate subpoena shall be required.  Upon presentment of this order, all persons, including financial institutions, shall provide account balance information, transaction histories, all account records and any other Receivership Records to the Receiver or his agents, in the same manner as they would be provided were the Receiver the signatory on the account.  Further, any attorney holding on behalf of any defendant or Relief Defendant, any retainer or other deposit of money or asset for legal services or any other purpose—except for representation in connection with a pending or potential criminal proceeding—shall promptly deliver such moneys or assets to the Receiver.

4.    The Receiver is authorized, without breaching the peace, and with the assistance of local peace officers or the United States Marshals Service, if necessary, to enter and secure any premises, wherever located or situated, in order to take possession, custody, or control of, or to identify the location or existence of, Receivership Assets or Receivership Records, including, but not limited to, the personal residences of, and/or any other premises or real property owned, controlled or possessed by Defendants and Relief Defendants, such as 6717 Lakewood Blvd., Dallas Texas, and 12248 Treeview Lane, Dallas, Texas. Entries into personal residences shall be initiated only between the hours of 9:00 a.m. and 5:00 p.m. CDT, Monday through Friday, unless a resident with authority to grant permission authorizes an entry to be initiated before or after the period allowed by this order, or authorizes an entry on a Saturday or Sunday.

5.    All persons, including defendants and Relief Defendants, and their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, who receive actual notice of this order by personal service or otherwise, are enjoined from in any way interfering with the operation of the Receivership, or in any way disturbing the Receivership Assets and Receivership Records, from filing or prosecuting any actions or proceedings that involve the Receiver or that affect the Receivership Assets and Receivership Records, specifically including any proceeding initiated pursuant to the United States Bankruptcy Code, except with the court's prior permission. Any actions so authorized to determine disputes relating to Receivership Assets and Receivership Records shall be filed in this court.

6.    The Receiver is hereby authorized to make appropriate notification to the United States Postal Service to forward delivery of any mail addressed to defendants and Relief Defendants or any company or entity under the direction or control of any of the defendants and Relief Defendants, to

any Post Office box or other mail depository, to himself. Further, the Receiver is hereby authorized to open and inspect all such mail, to determine the location or identity of assets or the existence and amount of claims.

7.    The Receiver is hereby authorized to make from Receivership Assets such ordinary and necessary payments, distributions, and disbursements as he deems advisable or proper for the marshaling, maintenance, or preservation of the Receivership Assets. From and after the date of entry of this order, the Receiver shall have the authority to conduct the business operations of defendants and Relief Defendants and the entities they control, including the collection of rents, note payments, and insurance premiums, or continuation and termination or any employment arrangement and the terms thereof. The Receiver shall have the authority to contact and negotiate with any creditors of defendants and Relief Defendants for the purpose of compromising or settling any claim. To this purpose, in those instances in which Receivership Assets serve as collateral to secured creditors, the Receiver may surrender such assets to secured creditors, and shall have the authority to make such surrender conditional upon the waiver of any deficiency of collateral. Furthermore, the Receiver is authorized to renew, cancel, terminate, or otherwise adjust any agreements to which any of these defendants and Relief Defendants is a party.

8.    The Receiver is hereby directed to file with the court and serve upon the parties, within 21 days after entry of this order (or, on the Receiver's request and for cause shown, at a later date), a preliminary report setting out the identity, location, and value of the Receivership Assets, any liabilities pertaining thereto, and any assets of the defendants and Relief Defendants beyond the value of the assets received from defendants in the course of the events made the basis of this action. Further, at the time the Receiver makes such report, he shall recommend to the court whether, in his

opinion, based on his initial investigation, claims against defendants and Relief Defendants should be adjudged in the Bankruptcy Court. After providing the parties an opportunity to be heard, this Court will determine whether to accept the Receiver's recommendation and, if appropriate, issue an order authorizing the Receiver to commence a bankruptcy proceeding.

9.      This order does not prohibit the prosecution of any civil action or other proceeding against defendants or Relief Defendants, including non-dischargeability proceedings and enforcement of any judgments obtained in such actions or proceedings, or effect the release of any claim asserted therein. However, to the extent judgment creditors or other claimants seek to prosecute an action or proceeding against defendants or Relief Defendants or to satisfy a judgment or claim from Receivership Assets, they may do so only with the prior permission of this court or the United States Bankruptcy Court, if the Receiver recommends, and the court approves, commencement of such a proceeding, and in accordance with an order of priority established by a plan of liquidation and distribution, or any automatic or other stay provided under the Bankruptcy Code.

10.     The Receiver is hereby authorized to employ such employees, accountants, attorneys, and others as are necessary and proper for the collection, preservation, maintenance, and operation of the Receivership Assets and Receivership Records.

11.     The Receiver is hereby authorized to receive and collect any and all sums of money due or owing to defendants or Relief Defendants, whether the same are now due or shall hereafter become due and payable, and is authorized to incur such expenses and make such disbursements as are necessary and proper for the collection, preservation, maintenance, and operation of the Receivership Assets.

12.    The Receiver is hereby authorized to institute, defend, compromise, or adjust such actions or proceedings in state or federal courts now pending and hereafter instituted, as may in his discretion be advisable or proper for the protection of the Receivership Assets or proceeds therefrom, and, with the court's permission, to institute, prosecute, compromise, or adjust such actions or proceedings in state or federal court as may in his judgment be necessary or proper for the collection, preservation, and maintenance of the Receivership Assets.

13.    With the court's permission, the Receiver is hereby authorized to institute actions or proceedings to impose a constructive trust, and to obtain possession and/or recover judgment with respect to persons or entities who received assets or funds traceable to investor monies. All such actions shall be filed in this court.

14.    At the Receiver's request, the United States Marshals Service is hereby  to assist the Receiver in carrying out his duties to take possession, custody, or control of, or identify the location of, any Receivership Assets or Receivership Records. The Receiver is authorized to remove any person from any premises or real estate constituting a Receivership Asset who attempts to interfere with the Receiver, his attorneys, or his agents in the performance of their duties. The Receiver is also authorized to change any locks or other security mechanisms with respect to any premises or other assets that constitute Receivership Assets.

15.    The Receiver shall keep the Commission apprised at reasonable intervals of developments concerning the operation of the receivership, and shall provide to the Commission upon request any documents under the control of the Receiver.

16.   The Receiver shall file on at least a quarterly basis an application for approval of the disbursements for professional fees and expenses to himself or others. Any and all costs incurred by the Receiver shall be paid from the Receivership Assets.

II

It is further ordered that the court shall retain jurisdiction of this action for all purposes. The Receiver is hereby authorized, empowered, and directed to apply to the court, with notice to the Commission and defendants AmeriFirst Funding, AmeriFirst Acceptance, Bruteyn and Bowden, and Relief Defendants American Eagle and Hess, for issuance of such other orders as may be necessary and appropriate to carry out the court's order.

III

It is further ordered that this order will remain in effect until modified by further court order.

**SO ORDERED**.

July 2, 2007.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § | |
| VS. | § § | Civil Action No. 3:07-CV-1188-D |
| AMERIFIRST FUNDING, INC., et al., | § § § | |
| Defendants. | § § | |

## ORDER

The clerk of court is directed to unseal the orders filed in this case under seal on July 2, 2007,

each of which was identified in the caption as a "SEALED ORDER."

**SO ORDERED.**

July 3, 2007.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

Certified a true copy of an instrument
on file in my office on _07/10/07_
Clerk, U.S. District Court,
Northern District of Texas
By _____ Deputy

**CERTIFICATE OF SERVICE**

STATE OF CALIFORNIA      )
                                ) ss.
COUNTY OF LOS ANGELES    )

      I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 601 S. Figueroa Street, Suite 3700, Los Angeles, California 90017-5742.

      On **July 11, 2007,** I served the foregoing document described as **NOTICE OF RECEIVERSHIP** on the parties having appeared in this action:

*SEE ATTACHED SERVICE LIST*

☒   by placing true copies (☐ the original) thereof enclosed in sealed envelopes addressed as stated on the attached mailing list;

☒   **BY FIRST CLASS MAIL:** I placed true copies in a sealed envelope addressed as indicated above, on the above-mentioned date. I am familiar with the firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service with postage thereon fully prepaid on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐   **BY PERSONAL SERVICE:** I caused to be delivered such envelope by hand to the offices of the addressee so specified on the attached service list. A Proof of Personal Service will be filed with the Court forthwith.

☐   **BY OVERNIGHT DELIVERY**: I am "readily familiar with the firm's practice of collection and processing correspondence for mailing via Express Mail (or another method of delivery providing for overnight delivery pursuant to CCP §§ 1005(b) and/or 1013(d)). Under that practice, it would be deposited with the United States Postal Service or other overnight delivery carrier (in this case, Federal Express) on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.

☐   **BY HAND DELIVERY**: I delivered such envelope to the parties listed on attached service list.

☐   **BY FACSIMILE TRANSMISSION:** I caused to be transmitted via telecopier the within document to the offices of the addressee at the facsimile telephone number listed.

☒   **FEDERAL:** I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on **July 11, 2007**, at Los Angeles, California.

Katerina Klouda

ANDREWS KURTH LLP
601 SOUTH FIGUEROA STREET, SUITE 3700
LOS ANGELES, CALIFORNIA 90017-5742
(213) 896-3100

LOS:110204.1

1

## SERVICE LIST

2

3    *Securities and Exchange Commission,*

4    *vs.*
     *Amerifirst Funding, Inc. et al.*

5    United States District Court
     For the Northern District of California
6    Oakland Division

7
     Case No. _____
8

9    Jeffrey B. Norris                              Attorneys for Plaintiff Securities and
10   U.S. Securities & Exchange Commission          Exchange Commission
     801 Cherry St., 19th Floor
11   Fort Worth, Texas 76102

12

13   Phillip W. Offill, Jr.                         Attorneys for Defendant Amerifirst Funding,
     3131 McKinney Avenue, Ste. 535                 Inc. *aka* Ameri-First Funding, Inc. *aka*
14   Dallas, Texas 75204                            Ameri First Funding, Inc., Amerifirst
                                                    Acceptance Corp., Jeffrey C. Bruteyn,
15                                                  Dennis W. Bowden
                                                     & Relief Defendants American Eagle
16                                                  Acceptance Corp. and Hess Financial Corp.

17

18

19

20

21

22

23

24

25

26

27

28

ANDREWS KURTH LLP
801 SOUTH FIGUEROA STREET, SUITE 3700
LOS ANGELES, CALIFORNIA 90017-5742
(213) 896-3100